GEORGE M. ROUND *v.* EDWARD S. PIKE.

November Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed January 9, 1930.

*Fenton, Wing & Morse* for the defendant.

*Marvelle C. Webber* for the plaintiff.

MOULTON, J.   This is an action in tort to recover for injuries sustained in an automobile accident, caused, as alleged, by the negligence of the defendant.   Trial was by jury, and the verdict was for the plaintiff.   The defendant excepted.

The only exception briefed is to the refusal of the trial court to direct a verdict for the defendant. The evidence taken, as it must be, in the light most favorable for the plaintiff tended to show the following facts: The plaintiff and the defendant were members of the Rutland high school orchestra, composed of six boys. The plaintiff was something over nineteen; the defendant was fifteen. On the evening of June 24, 1927, the orchestra furnished music at a dance at Middletown Springs. All the members of the orchestra went there from Rutland at the invitation of the defendant, in an automobile driven by him and owned by his grandfather, who had given him permission to drive it provided either the plaintiff, or another member of the orchestra named Robert Mangan, each of whom held a license to drive a car, should sit upon the front seat with him. The defendant had no license to drive and could not obtain one under the statute, because he was not yet sixteen years of age. No. 70, Acts 1925, § 38. The requirement that either the plaintiff or Mangan should sit on the same seat with him was to satisfy the provisions of section 44, of the Act above mentioned, and so enable the defendant lawfully to operate the automobile.

After the dance, the orchestra started on the return trip to Rutland. The defendant drove; Mangan sat next him; the plaintiff sat on the other side of Mangan; the other three boys sat on the rear seat. At about 1.30 A.M., on June 25, they reached a sharp curve in the road and here the accident took place. For two or three miles before reaching the curve the defendant had been driving at the rate of forty miles an hour. About 250 to 300 feet before reaching it the plaintiff said to the defendant: "There is a bad curve ahead. You will have to slow down before you hit it." The defendant nodded his head in assent. The plaintiff knew that he was understood, and so he dismissed the matter from his mind and turned to talk with the boys on the back seat, supposing that the defendant would pay attention to his warning. When about 150 feet from the scene of the accident Mangan warned the defendant and told him "to take it easy, a bad curve." Again the defendant nodded his head. The plaintiff did not hear Mangan speak. As the car entered the sharp part of the curve, without slackening speed, the defendant suddenly applied his brakes, the car skidded,

went out of the road, struck a tree and the plaintiff sustained his injuries.

A quarter or half a mile before reaching the scene of the accident, one of the boys upon the back seat told the defendant to slow down, and the defendant did so. This was known to the plaintiff. The defendant had driven over the road four or five times before both by day and night. The plaintiff did not understand that it was necessary for both him and Mangan to sit on the seat with the driver, he testified: ''Just one of us had to sit there.''

█ The first two grounds of the motion for a directed verdict amount to the same thing, that the evidence, taken in the light most favorable for the plaintiff, showed that his own negligence contributed to the accident. No question is made as to the defendant's negligence. It is not claimed that the parties were engaged in a joint enterprise, and, indeed, it cannot be said as a matter of law upon the evidence that the parties had an equal right to direct and govern the movements and conduct of each other with respect to the objects and purposes of the undertaking; *Robinson* v. *Leonard*, 100 Vt. 1, 8, 134 Atl. 706; *Landry* v. *Hubert*, 100 Vt. 268, 274, 137 Atl. 97; *Loomis* v. *Abelson*, 101 Vt. 459, 462, 144 Atl. 378: In this respect the case is distinguishable from *Wentworth* v. *Waterbury*, 90 Vt. 60, 63, 96 Atl. 334.

In discussing this phase of the motion, the plaintiff is treated as an invited guest. It is argued that even so he was not excused from taking reasonable precautions for his own safety, and the mere fact that he warned the defendant at the point where he said he did was not enough when he knew that the warning was not heeded and that the defendant was approaching a dangerous curve at undiminished speed, while he, dismissing the matter from his mind, turned to converse with the boys on the back seat.

██ Undoubtedly an invited guest, riding in an automobile driven by another, must take reasonable precautions for his own protection. He must act as a prudent man would act in the same situation. *McAndrews* v. *Leonard*, 99 Vt. 512, 525, 134 Atl. 710; *Lefebvre's Admr.* v. *C. V. Ry. Co.*, 97 Vt. 342, 349, 350, 123 Atl. 211; *Wentworth* v. *Waterbury, supra*, page 64 of 90 Vt., 96 Atl. 334. But he is not held to the same degree of watchfulness as is the driver, to keep the speed within

proper limits. *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 293, 143 Atl. 394; *McAndrews* v. *Leonard, supra.* This is so whether he sits upon the front or the rear seat of the car. *Higgins, Admr.* v. *Metgzer, supra; Leclair* v. *Boudreau,* 101 Vt. 270, 271, 143 Atl. 401. Nor is he bound to anticipate that the driver will omit the exercise of proper care. *Higgins, Admr.* v. *Metzger, supra; McAndrews* v. *Leonard, supra; Lefebvre's Admr.* v. *C. V. Ry. Co., supra.*

■■ True, the plaintiff knew that a dangerous curve was ahead. But he had informed the defendant of this fact and of the necessity of slowing down. The latter understood him and indicated his assent. Furthermore, he knew that the defendant had complied with a similar warning not long before, and that Mangan, another licensed driver, was seated next to him. Whether the plaintiff was contributorily negligent in assuming that his warning would not go unheeded, or that Mangan would supply any further advice that might be necessary, and in paying no further attention to the speed of the car was, on the evidence, a question for the jury.

It is argued that the fact that Mangan may have warned the defendant, at a point nearer the scene of the accident cannot avail the plaintiff on the question of his contributory negligence, because, since he did not hear it, it did not affect his conduct. This may be so, but it was a circumstance from which the inference might be drawn that another warning by plaintiff, if it had been given, would have been ineffective, and therefore that the plaintiff's negligence, if such it was, in saying nothing further was not contributory in a legal sense, that is, not a part of the proximate cause of the accident. *Merrihew* v. *Goodspeed,* 102 Vt. 296, 216, 147 Atl. 346, 351; *Lefebvre's Admr.* v. *C. V. Ry. Co.,* 97 Vt. 342, 352, 123 Atl. 211; *LaMountain's Admx.* v. *Rutland R. R. Co.,* 93 Vt. 21, 24, 106 Atl. 517. The law does not require a useless precaution. *Lefebre's Admr.* v. *C. V. Ry. Co., supra,* page 351 of 97 Vt., 123 Atl. 211.

Without saying that this circumstance standing alone would be sufficient to take the case to the jury, we hold that upon all the evidence it was properly submitted upon the issue of the plaintiff's contributory negligence.

■ The remaining ground of the motion is that, since the plaintiff was a licensed operator and riding on the front seat with the unlicensed driver, he was legally responsible for the

operation of the car and was bound under the law to be in such proximity to the defendant as to exercise supervision of the management and operation of the car and therefore any act or omission on the part of the defendant therein was imputed to him and would bar his recovery.

The statute here in question (No. 70, Acts 1925, § 44) requires a licensed operator to sit at all times on the same seat with the unlicensed driver. Thus the operation of the automobile by the latter is made lawful. The evident purpose of the statute is to provide for the presence of a qualified person in such a position that he will be enabled to furnish with reasonable promptness such advice and assistance as may be necessary for the safe operation of the car. *Hughes* v. *New Haven Taxicab Co.*, 87 Conn. 416, 87 Atl. 721, 722; *Bourne* v. *Whitman,* 209 Mass. 155, 165, 95 N. E. 404, 405, 35 L. R. A. (N. S.) 701, 703; *Blanchard* v. *City of Portland,* 120 Me. 142, 113 Atl. 18, 19. No doubt the licensed operator is charged with some degree of supervision over the unlicensed driver, but he is not placed in control of the operation of the car and made responsible for it so as to render the negligence of the unlicensed driver as a matter of law imputable to him. The statute is silent upon this point, and if this result had been intended by the Legislature it would have expressly so stated. Under a similar statute of New Jersey it was held that the fact that the plaintiff was a licensed driver, riding with the defendant for the purpose of complying with the law, did not *per se* give him any control over the actual operation of the car. *Van Sciver* v. *Abbott's Alderney Dairies,* 6 N. J. Misc. Rep. 949, 143 Atl. 153, 154.

This ground for the motion being in part, at least, unsound, it was not error to overrule it.

Under this view of the case, it is unnecessary to consider whether the plaintiff's situation was affected by the fact that Mangan, another licensed driver, also sat upon the same seat with the defendant.

*Judgment affirmed.*

NOTE.—WATSON, C. J., having deceased, took no part in the above decision.