OPINION
{¶ 1} Appellant Amber Suriano is appealing the decision of the Jefferson County Court of Common Pleas to grant summary judgment to Appellee William Kulstad in a tort action. Appellant was injured while riding as a passenger in a minivan on a trip from Steubenville to Texas to attend a national NAACP conference. Appellee was one of the authorized drivers for the trip. Appellee was not driving at the time of the accident, but was in the front passenger seat. Appellant's original complaint alleged that Appellee was liable for the accident because the NAACP trip was a joint enterprise between him, the other driver and the NAACP. Appellant later filed a motion to add a claim of negligence against Appellee, which was overruled by the trial court.
 {¶ 2} The trial court granted summary judgment to Appellee on the joint enterprise claim. Appellant argues that there are facts in dispute on the issue of joint enterprise, and that it was an abuse of discretion to refuse to allow her to amend the complaint. The record indicates that Appellant incorrectly attempted to amend her complaint under Civ.R. 15(B), which deals with amending the complaint to conform to the evidence at trial. There has been no trial in this case, and the use of Civ.R. 15(B) was inappropriate. Concerning the claim of joint enterprise, the record reveals that Appellee was merely one of the drivers for the trip and did not have any right to control the van at the time of the accident. The right of joint control over the vehicle is crucial to a claim of joint enterprise involving an automobile accident. See Bloom v. Leech (1929), 120 Ohio St. 239,166 N.E. 137. The trial court's judgments were correct and are hereby affirmed.
 FACTS AND PROCEDURAL ISSUES {¶ 3} In July of 2002, Appellant was one of a group of young people traveling from Steubenville to Houston, Texas, to attend the national convention of the NAACP. She was eighteen years old at the time. She sustained injuries when the driver of the mini-van, Patricia Butler, lost control of the vehicle and crashed on Interstate 55 in Mississippi.
 {¶ 4} On October 27, 2003, Appellant filed a negligence complaint against Patricia Butler for causing the accident, and against the NAACP and Appellee on theories of agency and joint enterprise. On April 2, 2004, the trial court issued an order setting the time periods for discovery and pretrial motions, and set the trial date for January 18, 2005.
 {¶ 5} On November 22, 2004, Appellee filed a motion for summary judgment. Appellee filed his own deposition that same day in support of summary judgment. Appellee argued that his only involvement in this action was that he showed his driver's license to the rental company so that he would be listed as a potential driver of the rental van. (11/22/04 Depo., p. 18.) He did not make the arrangements to rent the van, he did not pay for the van, he did not sign any documents related to renting the van or becoming a driver of the van, and he was not the driver of the van at the time of the accident, although he was seated in the front passenger seat. (11/22/04 Depo., pp. 14, 17, 19, 26.) Appellee argued that Appellant's counsel asked no questions during the deposition relating to whether he was an agent or employee of the NAACP at the time of accident. In fact, Appellee was employed by the Jefferson County Education Service Center and not by the NAACP. (11/22/04 Depo., p. 4.) Appellee concluded that there was no evidence to show that he drove the van at the time of the accident or that he was involved in a joint enterprise with Patricia Butler or the NAACP.
 {¶ 6} Appellant filed a motion for a continuance of the trial, which was reset for May 12, 2005. The parties later agreed to have a hearing on the motion for summary judgment on May 13, 2005. There is no transcript of that hearing in the record.
 {¶ 7} On May 16, 2005, Appellant filed a three-part document containing a response to Appellee's motion for summary judgment, a separate motion for summary judgment against Appellee, and a motion to amend the complaint. The motion to amend the complaint consisted of two brief paragraphs and requested an amendment to conform to the evidence under Civ.R. 15. Appellant cited a small part of Appellee's deposition which noted that Appellee had grabbed the steering wheel for a few moments after Patricia Butler fell asleep at the wheel. The full context of Appellee's comments is as follows:
 {¶ 8} "Q [Appellant's Attorney]: Okay. And do you know how the accident occurred?
 {¶ 9} "A Yes.
 {¶ 10} "Q Could you tell me?
 {¶ 11} "A Patricia Butler fell asleep at the wheel.
 {¶ 12} "Q And you were in the front passenger seat when the accident occurred?
 {¶ 13} "A Yes.
 {¶ 14} "Q Did you see her fall asleep, or is this something that you're just putting together based on circumstantial evidence that you put together or heard?
 {¶ 15} "A I saw her sleeping.
 {¶ 16} "Q Did you have a chance to try to wake her up before the accident occurred?
 {¶ 17} "A Yes.
 {¶ 18} "Q And what did you do?
 {¶ 19} "A I said Pat wake up.
 {¶ 20} "Q And I assume the car — the van was moving?
 {¶ 21} "A Yes.
 {¶ 22} "Q Okay. And just describe what happened. I assume you weren't able to get her attention, or you were?
 {¶ 23} "A I was — got the impression — I was sleeping, dozing off, trying to sleep.
 {¶ 24} "Q Okay.
 {¶ 25} "A And when I woke up, I saw that the view out the front windshield was going horizontal instead of straight ahead.
 {¶ 26} "Q Okay.
 {¶ 27} "A And I looked over and saw that we were going off the highway to the median strip and —
 {¶ 28} "Q Oh, you weren't going right, you were going left?
 {¶ 29} "A We were going left.
 {¶ 30} "Q Okay.
 {¶ 31} "A Yes. And I looked at her. I remember her pose with her body sleeping, and I said, Pat, wake up. And I grabbed the wheel to get us going straight down the shoulder.
 {¶ 32} "Q You were off the road by this time, or partly off the road?
 {¶ 33} "A We were half on, half off.
 {¶ 34} "Q You were on the left shoulder, the one next to the median strip?
 {¶ 35} "A Yes.
 {¶ 36} "Q Okay. So you managed to get the wheel straightened out?
 {¶ 37} "A Yes.
 {¶ 38} "Q And she was still asleep, or was she coming out of it, or —
 {¶ 39} "A When I said Pat wake up, she woke up.
 {¶ 40} "Q Okay. So you got the van straightened out and you're half on the shoulder and half on the road. What happened to cause the van to — I assume it eventually crashed, or rolled, or something?
 {¶ 41} "A Yes.
 {¶ 42} "Q Okay. So how did that occur?
 {¶ 43} "A She jerked the wheel and — she hit the brake and jerked the wheel to go to the right and get back on the highway.
 {¶ 44} "Q Okay. And what effect did that have?
 {¶ 45} "A Well, then she rapidly went to the right and turned the wheel to the left to right —
 {¶ 46} "Q She overcorrected?
 {¶ 47} "A Yes. Applying the brake that whole time.
 {¶ 48} "Q Okay.
 {¶ 49} "A And we went from the left side of the road to the right and back to the left. I don't know if we went back to the right, but as I recall, we went to the right, to the left, and then we — the van rolled over.
 {¶ 50} "Q Now, during this time that she was apparently correcting, or overcorrecting, were you trying to help her out? Were you trying to keep the van — did you still —
 {¶ 51} "A No.
 {¶ 52} "Q Okay. So you let go of the wheel?
 {¶ 53} "A Yes.
 {¶ 54} "Q And she was in total control of the vehicle then?
 {¶ 55} "A She was not in control of the vehicle.
 {¶ 56} "Q Well, what I mean was, she was at the controls then?
 {¶ 57} "A She was at the controls of the vehicle, yes.
 {¶ 58} "Q Okay. And you weren't able to do anything, or you had elected not to try to fight her for the steering wheel?
 {¶ 59} "A She was awake now and in charge of driving the vehicle." (11/22/04 Kulstad Depo., pp. 26-29.)
 {¶ 60} Based on this testimony by Appellee, Appellant concluded that she was entitled to amend her complaint and receive summary judgment on grounds of joint enterprise and negligence.
 {¶ 61} On June 23, 2005, the trial court granted Appellee's motion for summary judgment, and stated that there was no just reason for delay pursuant to Civ.R. 54(B). On the same day the trial court overruled the motion to amend the complaint. On July 1, 2005, the court filed a nunc pro tunc entry correcting a clerical error in one of the judgment entries. The two judgment entries, along with the nunc pro tunc entry, completely dispose of the claims against Appellee. This Court has previously ruled that a final order that completely resolves and disposes of all claims against one party may be treated as a final appealable order under R.C. § 2505.02 and Civ.R. 54(B). Regional ImagingConsultants Corp. v. Computer Billing Services, Inc. (Nov. 30, 2001), 7th Dist. No. 00 CA 79; Helman v. EPL Prolong, Inc.
(2000), 139 Ohio App.3d 231, 743 N.E.2d 484.
 {¶ 62} This timely appeal was filed on July 15, 2005.
 ASSIGNMENTS OF ERROR {¶ 63} Appellant's first assignment of error states:
 {¶ 64} "IT WAS ERROR FOR THE TRIAL COURT TO GRANT APPELLEE KULSTAD'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 65} A trial court's ruling on a motion for summary judgment is reviewed de novo on appeal, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.
 {¶ 66} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, andidentifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of thenonmoving party's claim." (Emphasis sic.) Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293,662 N.E.2d 264.
 {¶ 67} The trial court sustained Appellee's motion for summary judgment regarding the claims that were in the original complaint, namely, that Appellee was engaged in a joint enterprise with Patricia Butler and the NAACP, and by extension, that Patricia Butler's negligence should be imputed to Appellee. The law of joint enterprise with respect to automobile accidents was first promulgated in the case of Bloom v. Leech (1929),120 Ohio St. 239, 166 N.E. 137, which held that: "The doctrine of imputed negligence does not ordinarily apply in Ohio, an exception being when parties are engaged in a joint enterprise." Id. at syllabus. Bloom involved an automobile accident at a streetcar crossing. The passenger's involvement in the incident consisted of giving the driver directions to their ultimate destination, and in assisting the driver to see if it was safe to cross the tracks. Bloom held that:
 {¶ 68} "In crossing accidents of this character, the test in determining the question is whether the parties were jointly
operating or controlling the movements of the vehicle in which they were riding. There must be a right of mutual control. Where the guest has no voice in directing and governing the movements of the automobile, he cannot be said to be engaged in a joint adventure with the driver, within the meaning of the law of negligence.
 {¶ 69} "A good statement of the rule and one recognized in many states, is as follows: `Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management.'" (Emphasis in original.) Id. at 243-244, citing St. Louis Sante Fé R. Co. v. Bell,58 Okl. 84, 159 P. 336, L.R.A. 1917A, 543.
 {¶ 70} The Bloom Court further held:
 {¶ 71} "The rule is aptly stated by the Supreme Court of Connecticut in Coleman v. Bent, 100 Conn., 527, 124 A., 224: `A joint adventure in the use of an automobile, implies a common possession and right of control of the vehicle and a responsibility for its negligent operation equally common to all of its occupants; and therefore the rule or doctrine of joint adventure should be restricted to cases in which these essentials are clearly apparent from the agreement of the parties, or arise as a logical inference or legal conclusion from the facts found by the trier.'
 {¶ 72} "The evidence not tending to show any such joint control, or the right to control, over the means of transportation, nor facts from which the same could reasonably be inferred, the trial court was right in finding that there was nothing to submit to the jury upon that point." Id. at 246.
 {¶ 73} Both parties cite Allen v. Benefiel (Sept. 30, 1999), 10th Dist. No. 99AP9-0, which is one of the primary cases interpreting and applying Bloom. The Allen case involved a drinking and driving accident. In Allen, the trial court granted summary judgment to David Benefiel, who was a passenger in the car that caused the accident. Cynthia Lawrence was the driver, and the plaintiff argued that Mr. Benefiel was liable on the theory of joint enterprise. Allen found that:
 {¶ 74} "The above evidence shows that appellee had no control over or right to control the operation of the vehicle driven by Ms. Lawrence. Indeed, it is clear that appellee was highly intoxicated and probably passed out or was sleeping at the time of the collision. The fact that appellee persuaded Ms. Lawrence to drink at the Char Bar, paid for her drinks, asked her to stop at The Garage, gave her directions, and benefited from getting a ride home from her is not sufficient to make this a joint enterprise. Appellee may have done all of these things; however, none of them constituted control over the actual operation of the vehicle." Id. at *5.
 {¶ 75} The Allen court noted that most automobile accident cases raising the issue of joint enterprise have found that no joint enterprise exists. Id. at *3. Allen held that, "[t]here must be a right of mutual control and where the guest has no voice in directing and governing the movements of the automobile, the guest cannot be said to be engaged in a joint `venture' with the driver." Id. at *2.
 {¶ 76} Although Appellant has attempted to prove some aspects of joint enterprise, such as the common goal that Appellant and Appellee had in attending the NAACP convention, there is no evidence showing an actual right to joint control over the vehicle, at least in the sense the Bloom and Allen cases describe. Appellant attempts to rely upon the rental agreement that listed Appellee as an additional renter. It should first be noted that this document was not submitted as proper evidence in the summary judgment proceedings, but appears to have been simply copied and attached to Appellant's response to the motion for summary judgment and to her brief on appeal. Even if it were appropriate evidence, it merely shows that somebody put Appellee's name on the form as an additional renter, because Appellee's signature does not appear on the form. Furthermore, being a co-renter of a van has nothing to do with who had the right to control the operation of the van at the time of accident. In Ohio, the statutory law (and common sense would dictate) that only the driver has the right to control the operation of a motor vehicle: "No passenger in a vehicle * * * shall ride in such position as to interfere with the driver's view ahead or to the sides, or to interfere with the driver's control over the driving mechanism of the vehicle." R.C. §4511.70(B). It is the duty of the passenger to not interfere with the driver, and in fact, according to R.C. § 4511.70, it is a criminal offense for a passenger to interfere with the driver. Simply putting a person's name on a rental agreement does not override the traffic laws of Ohio.
 {¶ 77} Appellant also points out that Appellee actually reached over and took hold of the steering wheel when he saw the car going off the road. This may show that Appellee had self-preservation instincts, but it reveals nothing about a joint enterprise. Even if it could be said that Appellee had a "right" to control the vehicle when he saw it was going to crash, this right did not arise out of any agreement, enterprise, or relationship with Patricia Butler or with the NAACP, but merely out of his own interest in avoiding being a victim in an automobile accident. Once again, this is not the type of "right to control" discussed in Bloom or Allen, supra, which both refer to a right of control arising out of an agreement between the parties.
 {¶ 78} In short, Appellant did not rebut Appellee's evidence that he had no right to control or operate the van at the time of the accident. Thus, Appellant's first assignment of error is overruled.
 {¶ 79} Appellant's second assignment of error states:
 {¶ 80} "IT WAS A GROSS ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY APPELLANT SURIANO'S MOTION TO AMEND HER COMPLAINT TO CONFORM TO THE EVIDENCE."
 {¶ 81} A trial court's ruling on a Civ.R. 15 motion to amend a complaint is reviewed for abuse of discretion. Schweizer v.Riverside Methodist Hosps. (1996), 108 Ohio App.3d 539, 545,671 N.E.2d 312; Behm v. Victory Lane Unit Owners' Assn., Inc.
(1999), 133 Ohio App.3d 484, 489, 728 N.E.2d 1093. Appellant sought to amend her complaint to conform to the evidence, which is a request pursuant to Civ.R. 15(B):
 {¶ 82} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
 {¶ 83} As Appellee correctly points out, Civ.R. 15(B) involves amending a complaint during trial, and there was no trial in this case. Appellant used an improper form to request an amendment to her complaint, and for this reason alone the trial court was justified in overruling the motion. Assuming arguendo, though, that Appellee was actually requesting an amendment under Civ.R. 15(A), there are additional reasons for the trial court to overrule her request to add a negligence claim against Appellee. Civ.R. 15(A) states:
 {¶ 84} "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."
 {¶ 85} The basic principle in ruling on a motion to amend the complaint after twenty-eight days is that such leave should be liberally granted, "when justice so requires." Nevertheless, the trial court does have discretion in the matter, and, "[w]hile the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." Turner v. Cent. Local School Dist. (1999),85 Ohio St.3d 95, 99, 706 N.E.2d 1261.
 {¶ 86} In this case, there were ample reasons why justice did not require an amendment of the complaint. Appellee had waited until after the summary judgment hearing to make the request, which was 19 months after the complaint had been filed. Furthermore, she based her request on some highly redacted comments in Appellee's deposition, which transcript she had in her possession a full six months prior to her motion to amend. The motion itself was presented in a cursory manner, in nine lines at the end of a response to Appellee's motion for summary judgment.
 {¶ 87} Although Appellant contends that she should have been permitted to amend the complaint based simply on Appellee's deposition testimony, she only cites a few lines of that testimony. The full context of Appellee's deposition testimony was cited earlier, and it is clear that the testimony presents no facts that would support a negligence claim. The testimony reveals that Patricia Butler fell asleep at the wheel, that Appellee awoke before the van crash, tried to steer the van for a few moments until Butler woke up, and that Appellee let go of the wheel after Butler began attempting to maintain control of the van once again. The fact that Appellee said that Butler did not have full control of the van when he removed his own hand from the steering wheel is not a reason to amend the complaint. It should have been obvious that Butler was never in full control of the van because the van crashed. Appellee clearly stated that he let go of the steering wheel after Butler awoke, and although we may speculate about whether he could have prevented the accident by continuing to steer from the passenger seat, the basic duty of a passenger is to let the driver actually drive the vehicle. Justice did not require that the complaint be amended, and the trial court was within its discretion to overrule the untimely motion to amend the complaint even if such request had been properly made. Thus, Appellant's second assignment of error is overruled.
 {¶ 88} Appellant has not established any facts that would support a claim of joint enterprise against Appellee, and did not provide any sound reasons for the trial court to allow her to untimely amend her complaint after the summary judgment proceedings had concluded. Therefore, both assignments of error are without merit, and the two judgments of the trial court at issue in this appeal are affirmed in full.
Vukovich, J., concurs.
DeGenaro, J., concurs.